MRS. DAVID DILLS v. T. S. CORNWELL, JR., AND BARBARA COOKE CORNWELL, EXECUTORS OF THE ESTATE OF ALVIN A. NICHOLS, DECEASED.

(Filed 21 October, 1953.)

**1. Executors and Administrators § 15d—**

In an action against executors to recover on *quantum meruit* for services rendered their testate prior to his death, a check, not paid because of death of the maker prior to presentation, drawn payable to plaintiff's order, with notation in the corner "for home" is competent when plaintiff properly identifies the signature as that of testate, since the check tends to show that the services were rendered and received with mutual understanding that they were to be paid for.

**2. Same—**

Evidence of plaintiff to the effect that she was no kin to testate and that she lived in testate's house, with members of her own family, during the last three years of testate's life, and during that time looked after his house and nursed and took care of testate, and that several months before his death testate required constant attention, together with evidence that testate had executed a check to her in payment "for home," *is held* sufficient to be submitted to the jury in an action by plaintiff to recover upon *quantum meruit* for her services under the presumption that, in the absence of some express or implied gratuity, services rendered another which are knowingly and voluntarily accepted, are given and accepted in the expectation of payment.

APPEAL by defendants from *Gwyn, J.,* at May Term, 1953, of JACKSON.

Civil action to recover on implied contract for services rendered by plaintiff to testate of defendants.

These facts appear from the record in case on appeal to be uncontroverted:

(1) Plaintiff is a resident of Jackson County, North Carolina, and defendants, residents of Sampson County, are the qualified and acting executors of the will of Dr. Alvin A. Nichols, which was probated in said Jackson County on 15 August, 1952, he having resided in that county. Plaintiff is of no kin to Dr. Nichols.

(2) In July 1947 plaintiff and her family moved into an apartment located next to the residence of Dr. Nichols, and owned by him, in the town of Sylva, Jackson County, North Carolina. He, then 71 years of age and alone, boarded, that is, took his meals with plaintiff, and she cared for his residence. However, she moved with her husband to Raleigh.

(3) But in May, 1948, plaintiff moved back to Sylva and into the residence of Dr. Nichols, and became his housekeeper, and nurse to him in his sickness, and so rendered services to and for him, cooking, washing, buying groceries, etc., until his death on 9 August, 1951. During the last year and a half he was in declining health and for several months before his death required constant attention and nursing, which plaintiff rendered to him.

(4) A part of the time plaintiff's minor son lived in the home and was provided for by plaintiff, and, too, from time to time members of plaintiff's family visited him. Plaintiff's child and her husband, when off duty, and another member of her family from time to time were with her.

After the death of Dr. Nichols a check dated 27 July, 1951, for $10,000, drawn on the Jackson County Bank, Sylva, N. C., payable to the order of plaintiff, and purporting to be signed in his name, bearing on the left-hand corner the notation "For home," was presented to the bank for payment, but was not paid because the maker was dead.

Upon the trial in the Superior Court plaintiff offered evidence tending to show and amplifying the above uncontroverted matters. She also offered evidence identifying the signature to the check, and then offered the check in evidence.

On the other hand, defendant offered evidence from which they contend plaintiff had been fully compensated for services rendered.

The case was submitted to the jury upon these issues:

1. Did the plaintiff Mrs. David Dills, during the last three years of the life of Dr. A. A. Nichols, under an implied contract, perform services for Dr. A. A. Nichols, which he knowingly accepted and did not pay or settle for, as alleged in the complaint?

2. If so, what amount, if any, is the plaintiff entitled to recover for such services?

The jury answered the first issue "Yes," and the second "$8,000."

And from judgment signed in accordance therewith, defendants appeal to the Supreme Court and assign error.

*David M. Hall and Orville D. Coward for plaintiff, appellee.*
*Stillwell & Stillwell and Howard H. Hubbard for defendants, appellants.*

WINBORNE, J.  Decisions of this Court hold that "in the absence of some express or implied gratuity, usually arising out of family relationship or mutual interdependence, services rendered by one person to or for another, which are knowingly and voluntarily received, are presumed to be given and accepted in expectation of being paid for, and the law will imply a promise to pay what they are reasonably worth." See *Ray v. Robinson,* 216 N.C. 430, 5 S.E. 2d 127, citing *Winkler v. Killian,* 141 N.C. 575, 54 S.E. 540, and *Callahan v. Wood,* 118 N.C. 752, 24 S.E. 542.

Here, as in the *Ray case,* "there is no presumption of gratuity, but facts and circumstances from which the inference may be drawn that payment was intended on the one hand and expected on the other." Indeed, the principle has been extended to a case where services were rendered by a daughter-in-law to and for her father-in-law. See *Lindley v. Frazier,* 231 N.C. 44, 55 S.E. 2d 815. There this Court, in opinion by *Seawell, J.,* declares: "The relationship of daughter-in-law has been held not to raise the presumption that services performed while living with the family are gratuitous . . . But, although the plaintiff may not have been confronted with this presumption to hurdle, the burden still rested upon her to show circumstances from which it might be inferred that the services were rendered and received with the mutual understanding that they were to be paid for. The *quantum meruit* must rest upon an implied contract. Nothing else appearing, such an inference is permissible when

a person knowingly accepts from another services of value, or, as it is sometimes put, under circumstances calculated to put a reasonable person on notice that the services are not gratuitous."

Hence the check for $10,000, the signature being properly identified as that of Dr. Nichols, in accordance with the burden of proof, was relevant, and competent as tending to show a circumstance from which it might be inferred that the services were rendered and received with the mutual understanding that they were to be paid for. *Lindley v. Frazier, supra.*

Now, appellants bring to this Court numerous assignments of error directed to specific portions of the charge, as well as to things left unsaid which they contend ought to have been said. However, in the light of the principles above stated, applied to the evidence shown in the case on appeal, error, in the respects defendants point out, is not shown.

Moreover, the assignment of error based upon exception to the denial of defendants' motions for judgment as of nonsuit is without merit. Here, as stated by *Stacy, C. J.,* in *Ray v. Robinson, supra,* "Upon issues of fact, determinable alone by the jury, the plaintiff has been allowed to recover accordant with settled principles of law." .

We find

No error.